## Philadelphia & Easton Transit Co. v. Philadelphia Suburban Gas and Electric Co.

*Public service companies—Electric companies—Passenger railway companies—Erection of poles on railway company's right of way—Equity—Jurisdiction—Public Service Commission.*

1. Where an electric light company notifies a passenger railway company that it proposes to erect poles on the latter's right of way and the railway company makes no immediate objection and does not file any protest against such action with the Public Service Commission, it cannot, after five months, maintain a bill in equity against the electric light company to enjoin the erection of the poles in question.

2. In such case, the railway company has an adequate remedy at law in its right to protest to the Public Service Commission against the proposed construction upon its right of way.

3. A court of equity has power to restrain the erection of the poles in a proper case, in aid of the commission, to preserve the *status quo*, until the commission can act, but it cannot determine the merits of the controversy.

Bill in equity for injunction. C. P. Bucks Co., April T., 1925, No. 2.

*Bunting & Satterthwaite*, for plaintiffs.

*Harman Yerkes* and *Webster S. Achey*, for defendant.

RYAN, P. J., June 2, 1925.—The plaintiff seeks to restrain the defendant from constructing its line of poles and wires upon plaintiff's right of way, by planting its poles between the feeder wires of the plaintiff's line and stringing its wires upon said poles above said wires of the plaintiff. The defendant, by its answer, contends that the construction of its line is authorized by General Order No. 13 of the Public Service Commission of the Commonwealth of Pennsylvania, adopted Feb. 27, 1917, and is in conformity with the specifications prescribed by said commission, and known as "collinear construction." The defendant also avers that the plaintiff consented thereto.

From the pleadings and the evidence the court makes the following

### Findings of fact.

1. The plaintiff owns and operates a line of electric railway extending from Doylestown, Bucks County, to Easton, Northampton County, Pennsylvania.

2. The defendant proposes to erect poles and string wires thereon upon and along that part of the plaintiff's right of way beginning at a point known as the Landisville Road Crossing and extending thence to a point at Plumsteadville.

3. The defendant has begun the erection of poles and is about to string wires thereon upon the part of the plaintiff's right of way which it proposes to occupy with its line. The poles are and will be placed between the feeder wires of the plaintiff company and will carry copper wires on cross-arms at least six feet above the cross-arms of the poles of the plaintiff, to which the feeder wires are attached.

4. The part of defendant's line in process of construction and the entire line from the Landisville Road crossing to Plumsteadville, when completed, does and will consist of "collinear construction" within the definition of the term as used in the specifications prescribed by the Public Service Commission of the Commonwealth of Pennsylvania, hereinafter referred to.

5. The line of street railway operated by the plaintiff was constructed and is maintained along, upon and at the side of the public highway, upon a right of way acquired from the turnpike companies then owning and maintaining the turnpike roads constituting the highway between said Landisville Road

and Plumsteadville, with the consent in writing of the then abutting land owners.

6. The said highway is now part of Route 156 of the system of State highways of this Commonwealth, created by the Act of May 31, 1911, P. L. 492.

7. The plaintiff has not consented, but objects, to the use of its right of way by the defendant company in the erection and maintenance of the latter's pole-line thereon as contemplated by it.

8. All the abutting land owners save one have consented in writing to the erection of the defendant's pole-line as proposed.

9. The State Highway Department, on Nov. 6, 1924, issued its permit to the defendant to erect the proposed line along said State highway, and on May 6, 1925, renewed the same.

10. The Public Service Commission of the Commonwealth of Pennsylvania, on Feb. 27, 1917, adopted and promulgated the following:

"GENERAL ORDER No. 13.

"In the matter of the Regulation of the Construction of the Crossing of the Wires of a Public Service Company over or under the Facilities of Another Public Service Company.

"Whereas, Under the provisions of Article V, Section 12, of the Public Service Company Law, it is provided that no crossing of the wires of a public service company over or under the facilities of another public service company shall be constructed without the approval of the Commission, and, also, that it shall be proper for the Commission, by general rule or order, whenever the same can be properly regulated by suitable general rule, to prescribe the terms and conditions under which said crossing may be constructed, operated, maintained or protected without the particular approval of the Commission:

"And Whereas, The Commission, by its General Order No. 11, and its Administrative Ruling No. 8, has heretofore adopted certain rules and regulations governing the procedure to be followed in securing the approval of the Commission to such construction; and whereas, after careful investigation, the Commission is convinced that the construction of such crossings of the wires of public service companies over or under the facilities of other public service companies can be regulated by general order without the particular approval of the Commission in such a manner as to provide for a construction which will tend to prevent accidents and promote the safety of the public.

"Now, to wit, Feb. 27, 1917, It Is Ordered, That from and after the first day of June, 1917, all crossings of wires of public service companies over or under the facilities of other public service companies shall be made in accordance with the Specifications Covering the Construction at Crossings of Overhead Lines of Public Utilities hereto attached.

"And It Is Further Ordered, That from and after said first day of June, 1917, such crossings of wires over or under the facilities of other public service companies may be constructed by the companies lawfully authorized so to do in accordance with said specifications without the particular approval of this Commission, on condition that notice of said construction, specifying the particular point of crossing, shall be given to the public service company whose facilities are to be crossed prior to the beginning of the construction of said crossing.

"Protest against the construction of any such crossing may be made to the Commission at any time by filing formal complaint, which shall set forth the reasons which, in the judgment of the protestant, show that the crossing should not be constructed in accordance with the above mentioned specifications and proof of service thereof upon the company constructing the crossing shall be filed with the Commission within three days of the filing of the protest with the Commission. . . . ."

11. Before Oct. 31, 1924, the defendant notified the plaintiff of its intention to erect its pole-line from the Swamp Road to Plumsteadville and at certain locations upon the plaintiff's right of way.

12. No objection was made by the plaintiff or any one acting for it to the proposed construction, nor was any formal protest against it filed with the Public Service Commission of the Commonwealth of Pennsylvania, as pro-

vided by said General Order No. 13, set out in paragraph 10, *supra*. On the contrary, there was correspondence between officers of both companies in relation to a proposed agreement between them upon the subject.

### Discussion.

Both parties to this bill are declared to be public service companies by section 1 of article I of "Public Service Company Law," approved July 26, 1913, P. L. 1374. Jurisdiction of such controversies between them as is presented here has been transferred by this statute from the courts to the Public Service Commission, which is constituted the agency of the State "for the purpose of regulating public service companies and of carrying out the provisions of this act." The commission (except in the case noted of the abolition of grade crossings in process of abolition at the date of the approval of the act) is given "exclusive power to determine, order and prescribe, in accordance with plans and specifications to be approved by it, the just and reasonable manner, including the particular point of crossing, in which the tracks or other facilities of any public service company may be constructed across the tracks or other facilities of any other public service company at grade, or above or below grade, or at the same or different levels. . . . No such crossing shall be constructed without the approval of the commission, evidenced by its 'Certificate of Public Convenience,' as provided in section 5 of article III of this act; but in no case shall the approval or consent of any court, board, or other commission or officer, or of any municipality, be necessary therefor. It shall be proper, however, for the commission, by general rule or order, whenever the same can be properly regulated by suitable general rule, to prescribe the terms and conditions under which such crossing may be constructed, operated, maintained or protected without the particular approval of the commission." Pursuant to these powers, the commission adopted General Order No. 13. It provides the plaintiff in this case with an adequate remedy at law in the right to protest to the commission against the proposed construction upon its right of way by the defendant. A court of equity still has power to restrain by injunction in a proper case in aid of the commission, to preserve the *status quo* until the commission can act, but it cannot determine the merits of the controversy: Rochester B. & L. Ass'n *v.* Beaver Valley Water Co., 68 Pa. Superior Ct. 122; Bethlehem City Water Co. *v.* Bethlehem Borough (No. 2), 253 Pa. 333; Pittsburgh Rys. Co. *v.* Pittsburgh, 260 Pa. 424.

In the instant case the plaintiff was notified by the defendant about five months before the bill was filed of the latter's intention to occupy part of the plaintiff's right of way with "collinear construction." The plaintiff does not appear to have objected to it until it filed its bill. It has not protested to the commission against it. It has, therefore, failed to employ the legal remedy that has been available to it. The defendant was justified in assuming that the plaintiff had no objection to offer. There is here no emergency that requires the aid of equitable relief in order to secure to the plaintiff the preservation of the *status quo*. There was ample opportunity afforded it to make its protest against the proposed action of the defendant and secure a hearing before the commission, which has exclusive jurisdiction of the merits of the controversy. We have reached the following

### Conclusions of law.

1. The plaintiff is not entitled to the relief it prays for.

2. The plaintiff had an adequate remedy at law in the protest to the Public Service Commission provided by General Order No. 13.

Philadelphia & Easton Transit Co. v. Philadelphia Suburban Gas and Electric Co.

3. The injunction must be dissolved and the bill dismissed, at the costs of the plaintiff.

From Calvin S. Boyer, Doylestown, Pa.